LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER: DWCC-2025-0712

SECOND STEP RESPONSE FORM
(HEADQUARTERS)

TO: SCOTT, KELVIN 580322 — DWCC
Offender Name and Number — Living Unit

Received in this Office on 01/05/2026:

Your request for an Administrative review of ARP# DWCC-2025-0712 has been received. A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.

All pertinent documentation surrounding your request, including the unusual occurrence reports, statements provided by the security staff, the use of force investigation results and your medical records have been reviewed. None of the documents reviewed support your allegations. Due to your own actions, staff was forced to use only the minimal amount of force (chemical agent and pepper balls) necessary to bring you into compliance with the verbal orders issued to you. Once you ceased your disruptive behavior, you were assessed by medical staff. Your medical records indicated you had no visible injuries. Medical opinion is controlling. In statements from Capt. Corley and Major Gillentine, they deny your allegations. There is no reason to doubt the credibility of their statements nor the pertinent documentation which was found to support their statements. You have failed to provide any evidence to substantiate your allegations or that would cause us to believe otherwise. This office concurs with staff's findings on this matter. As such, no further investigation or administrative intervention is warranted.

Your request for Administrative Remedy is denied.

2-26-26

Date

Secretary's Signature or His Designee

Exhibit A

# MEMO

TO: KELVIN SCOTT, 580322 – N3A

FROM: SARAH NALITT
Legal Liaison

DATE: December 29, 2025

RE: ARP DWCC-2025-0712

Your request to have the above referenced Administrative Remedy Procedure (ARP) sent to the Secretary has been received.

The necessary documents have been sent to the Secretary for review.

Exhibit B

Dear Ms. Sarah Natlitt,

I'm writing to see where my back up ARP I filed 11.24.025 on Major Gillentine for Retaliation I carbon copied the grievance and it was put on Warden Dauzat and the whole security Adminstration for Allowing the Retaliation to Happen to Me. Could you please write me and let me know what step my process is in on my ARP, I have yet to Recieve Any correspondence About the issue At Hand! Thanks for your time Have A Nice Day!

Truly,

Kelvin D Scott JR #580322

The last ARP filed was DWCC-2025-0712 claiming you were beaten by Maj Gillentine + Capt Corley. It was answered on 11/25/25 + the second step response was given on 2/26/26. If that is not the ARP you are referring to, I would suggest filing it again.

-SNalitt

Exhibit C

Roderick & Solange MacArthur Justice Center

Roderick and Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans, Louisiana 70119
O 504 620 2259
F 504 208 3133

macarthurjustice.org

March 10, 2026

Kelvin Scott Jr. #580322
David Wade Correctional Center
670 Bell Hill Rd
Homer, LA 71040

**Re: Request for Assistance Kelvin Scott**
**Via: US Mail**

Dear Mr. Scott,

Thank you for reaching out to the MacArthur Justice Center. After reviewing your request, we regret to inform you that we are unable to represent you or advocate on your behalf concerning your legal matter.

Our office operates with limited resources and cannot take on every case. Please understand that our inability to assist does not reflect on the merit of your case. We urge you to consult with other legal professionals as soon as possible, as there may be time limits that affect your ability to pursue a claim. You can reach out to:
Disability Rights of Louisiana
Melanie Bray
8325 Oak Street
New Orleans, La 70118
mbray@disabilityrightsla.org

Please feel free to write to us again should you experience other legal issues or grievances. For any future correspondence, be sure to label your letter as "Legal Mail" and "Confidential."

We wish you strength during this time and are truly sorry that we cannot assist with your current request.

Exhibit D

Sincerely,

James W. Craig
Director, Louisiana Office

OFFENDERS' INFORMATION ON
SEXUAL MISCONDUCT AND SEXUAL HARASSMENT

The Louisiana Department of Public Safety and Corrections (DPS&C) is committed to ensuring a safe and humane environment for all offenders. An important part of a safe and humane environment is freedom from sexual misconduct or sexual harassment by staff. For the purpose of this guide, staff includes DPS&C employees, contract employees, contract employers, and volunteers. Offenders include those incarcerated, as well as those under the supervision of the Division of Probation and Parole. This guide explains offenders* rights and the safeguards that are in place for protection from sexual misconduct and sexual harassment.

*Sexual misconduct and sexual harassment* are terms used in this section to describe certain kinds of prohibited behavior involving a staff member and an offender. These terms are defined in following sections and there are also examples of each.

The DPS&C cannot and will not tolerate any form of sexual misconduct. In accordance with La. R.S. 15:828(A)(1), the Department recognizes the worth of each offender and strives to treat them in a humane manner. Specifically, the Department prohibits offender abuse, which includes sexual contact by a staff member and accordingly, the DPS&C maintains a zero tolerance policy with regard to sexual misconduct.

Due to the offender*s custody or supervision status, in accordance with DPS&C procedures, no prohibited act of sexual misconduct can have a claim of consent as an affirmative defense.

*Pursuant to La. R.S. 14:36, sexual intercourse with an offender is an attempt to commit battery and is addressed in the Disciplinary Rules and Procedures for Adult Inmates and Corrections Services Employee Manual.

**Sexual misconduct includes any sexual behavior or act of a sexual nature directed toward an offender.

In an effort to continually promote the professionalism of our staff, the DPS&C may pursue prosecution of any staff member who is involved in this type of activity Any physical contact with an offender of a sexual nature may result in prosecution in accordance with La. R.S. 14:134.1.

Alleged abuse (including sexual contact) of an offender shall be immediately reported to any employee or supervisor, which will be investigated, and if necessary, reported to local law enforcement.

The majority of DPS&C employees do not engage in this kind of conduct and do not support staff members who do. They recognize that improper behavior tarnishes their reputation and jeopardizes the safety and security of the institutions and the Probation and Parole district offices. It is important that everyone, staff and offenders, do their part to reduce the harm that results from sexual misconduct. The purpose of this document is to ensure that offenders are aware of the safeguards that exist.

What is Staff Sexual Misconduct?

Sexual misconduct is any behavior or act of a sexual nature directed toward an offender by an employee, volunteer, contractor, official visitor, or other agency representative (excluding offender*s family, friends, or other visitors). Sexual relationships of a romantic nature between staff and offenders are prohibited. Consensual and non-consensual sexual acts include:

**Intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, arouse, or gratify sexual desire;

**Completed, attempted, threatened, or requested sexual acts;

**Occurrences of indecent exposure, invasion of privacy (beyond that reasonably necessary for safety and security), or staff voyeurism for sexual gratification;

**Any sexual advance by staff members;

**Requests for sexual favors by staff members;

**Threats by staff for refusing sexual advances;

**Indecent exposure by a staff member in front of an offender; and

**Fondling or kissing.

Sexual acts or sexual contact between a staff person and an offender, even if the offender consents, initiates or pursues, are always prohibited.

What is Sexual Harassment?

Sexual harassment is repeated verbal statements or comments of a sexual nature to an offender by an employee, volunteer, contractor, official visitor, or other agency representative (excluding offender*s family, friends, or other visitors).

Examples of sexual harassment include but are not limited to:

**Demeaning references to an offender*s gender or derogatory comments about body or clothing;

**Repeated profane or obscene language or gestures;

**Jokes about gender-specific traits;

**Abusive, threatening, profane or degrading sexual commer[illegible] and

**Touching, attention, or conduct of a sexual nature.

What is Over-Familiarity?

Over-familiarity is staff engaging in or attempting to engage in conduct, likely to result in intimacy or a close personal relationship with an offender. Examples of this behavior by st[illegible] and offenders that is prohibited include, but is not limited to:

**Flirting with each other;

**Exchanging personal letters or gifts;

**Requests or granting of special favors; and

**Discussing personal matters unless it is an expectation of the staff member*s job responsibilities.

What is Retaliation?

Retaliation is intimidation to prevent an offender from filing a complaint or participating in an investigation of sexual misconduct. The Department prohibits any individual from interfering with an investigation, including intimidation or retaliation against witnesses. If an offender believes that she/he is being denied privileges, or is being unfairly transferred or punished in some way because she/he filed a complaint or assisted in the investigation of a complaint, she/he should report this to the Warden or District Supervisor.

Reporting Staff Sexual Misconduct or Sexual Harassment

Sexual misconduct or sexual harassment by staff is prohibited, bu[t] it must be reported before action can be taken. Do not rely on anyone else to report misconduct * when it is experienced or seen, report it immediately.

Discipline and/or criminal prosecution are more likely to be successful if the abuse is reported immediately.

To make sure that sexual misconduct is reported, the DPS&C has several ways for offenders to report confidentially. Offenders may use the reporting method with which they are most comfortable.

Exhibit E

RM

FORM OP-C-1-a
23 February 2023

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT

INSTITUTION: **David Wade Correctional Center**

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Kelvin Scott | 580322 | 23 October 2025 | Approx. 0955 |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| South Yard | U/A | N4 B-16 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Contraband | #1 |

10. Description of Incident (Include all relevant information – "unusual Inmate behavior, staff witnesses, physical evidence & disposition, immediate action taken, including use of force"). Use other side, if necessary.

On the above date and approximate time, I, Major Gillentine was reassigning inmate Kelvin Scott #580322 to N4 B-16 due to him being placed on investigative segregation. During this time I clearly observed that inmate Scott had an unknown item in the front pocket of his jumpsuit. I then retrieved the item and discovered that inmate Scott had one red pill, a half of a pink pill and two AA batteries wrapped in a piece of plastic. I then questioned inmate Scott about the items which he refused to make a statement. It was then determined by medical that the pill were his prescribed medication. The items were confiscated. Inmate Scott is currently housed on investigative segregation.

11. Inmate Placed in Administrative Segregation ☐ Yes ☒ No

| 12. Signature of Reporting Employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Nath Gillt C/Major | Nathaniel Gillentine, C/Major Wade 23 |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above Inmate by: | 17. Inmate's Signature |
|---|---|---|---|
| 23 October 2025 | 2045 | Capt. Stey [signature] | Inmate refused to sign ST |

| 18. Plea by Inmate: ☐ Not Guilty ☐ Guilty | 19. Verdict: ☐ Not Guilty ☐ Guilty |
|---|---|
| 20. Date of Hearing: 10/30/25 | 21. Counsel Substitute: [illegible] DOC #: |

22. Disciplinary Court Motions: Refer to Form OP-C-1-b.

23. Reasons For Disposition:
☐ Report is clear and precise. ☐ Lack of credible defense/little or no defense. ☐ Based on Inmate's statement.
☐ The officer's version is determined to be more credible than the Inmate's. ☐ Pled guilty/accepted guilty plea.
☐ Only defense is denying contents of report. ☐ The Inmate presented no evidence to refute the charges.
☐ The Investigative officer's testimony was deemed more truthful and accurate than the Inmate's. ☐ Plea bargain.
☐ The Inmate's demeanor led the board to believe that the Inmate's testimony was untrue.
☐ Other

24. Reasons for Sentence:
☐ Seriousness of offense ☐ The need to protect the institution, employees or other.

☐ Poor conduct record. A total of ________ rule violation(s). A total of ________ Schedule B violations since: ____________________.

A total of ________ # ________ rule violations since ____________________.

☐ Other: ____________________

| 25. Sentence: ☐ Suspended ☐ Imposed ______ Days | 26. Sentence: ☐ Suspended ☐ Imposed ______ Days |
|---|---|
| (60) days lss bg (6) days LTS | |

27. DISCIPLINARY BOARD: After an Inmate is found guilty of a disciplinary violation through a formal administrative hearing, the Disciplinary Board may order restitution in accordance with Department Regulation No. OP-C-11 "Imposition of Restitution via the Disciplinary Board."

[signature]
CHAIRMAN (DISCIPLINARY OFFICER)

[signature]
MEMBER

[signature]
MEMBER

Exhibit F

RM

FORM OP-C-1-a
23 February 2023

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT

INSTITUTION: **David Wade Correctional Center**

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Kelvin Scott | 580322 | 23 October 2025 | Approx. 1004 |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| RM ~~South Yard~~ N4B-16 | U/A | N4 B-16 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Disobedience, Aggravated | #5 |

10. Description of Incident (Include all relevant information – "unusual Inmate behavior, staff witnesses, physical evidence & disposition, immediate action taken, including use of force"). Use other side, if necessary.

On the above date and approximate time, I, Major Gillentine gave inmate Kelvin Scott #580322 a direct verbal order to come to the cell door to be restrained, so that he could be placed on strip cell status for a previous incident, which he refused. I then gave inmate Scott a second direct verbal order to come to the cell door to be restrained, which he still refused. Inmate Scott only complied after the use of chemical agent and pepper ball launcher. Inmate Scott is currently housed on investigative segregation. See attached UOR's.

11. Inmate Placed in Administrative Segregation ☐ Yes ☒ No

| 12. Signature of Reporting Employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Nathl Gillt C/Maj [signature] | Nathaniel Gillentine, C/Major Wade 23 |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above Inmate by: | 17. Inmate's Signature |
|---|---|---|---|
| 23 October 2025 | 2040 | Capt. [signature] | Inmate refused to sign |

18. Plea by Inmate: ☐ Not Guilty ☐ Guilty — 19. Verdict: ☐ Not Guilty ☐ Guilty

20. Date of Hearing: 10/24/25 — 21. Counsel Substitute: [signature] DOC #: 117061

22. Disciplinary Court Motions: Refer to Form OP-C-1-b.

23. Reasons For Disposition:
- ☐ Report is clear and precise. ☐ Lack of credible defense/little or no defense. ☐ Based on Inmate's statement.
- ☐ The officer's version is determined to be more credible than the Inmate's. ☐ Pled guilty/accepted guilty plea.
- ☐ Only defense is denying contents of report. ☐ The Inmate presented no evidence to refute the charges.
- ☐ The Investigative officer's testimony was deemed more truthful and accurate than the Inmate's. ☐ Plea bargain.
- ☐ The Inmate's demeanor led the board to believe that the Inmate's testimony was untrue.
- ☐ Other

24. Reasons for Sentence:
- ☐ Seriousness of offense ☐ The need to protect the institution, employees or other.
- ☐ Poor conduct record. A total of ______ rule violation(s). A total of ______ Schedule B violations since: ______.
- A total of ______ # ______ rule violations since ______.
- ☐ Other: ______

25. Sentence: ☐ Suspended ☐ Imposed ______ Days — 60 days dis/seg

26. Sentence: ☐ Suspended ☐ Imposed ______ Days

27. DISCIPLINARY BOARD: After an Inmate is found guilty of a disciplinary violation through a formal administrative hearing, the Disciplinary Board may order restitution in accordance with Department Regulation No. OP-C-11 "Imposition of Restitution via the Disciplinary Board."

[signature] Lt Col
CHAIRMAN (DISCIPLINARY OFFICER)

[signature]
MEMBER

[signature]
MEMBER

Exhibit 6

Exhibit H

Also on the 26th I asked to use the phone to file PREA and was told I couldn't Because I was on watch for Homicide/Suicide

# Times of All Requested Camera Footage

PS. Went From oct 23, 2025 All the Way to sat oct 25, 2025 without Having A Bowel movement or Able to do the # 2 due to the fact MACE went All the way up my ANUS

N4B#16 Thurs Oct 23, 2025 9:50 Am until taken off tier / Asked for Butt to Be Examined By Nurse phillips

Fri Oct 24, 2025 seen by Warden Burgos and told Him of incident And Also Asked 4 treatment

SAT N4C#16 Oct 25, 2025 6:30 Am + 7:10 Am Major Callentine comes to My Bars to Apologize I Refused to talk

Sunday N4C#16 Oct 26, 2025 6:58 Am to 7:07 Am Major Callentine said the Reasons 4 Him doing it was Because He thought I Hit the White Woman And Also Because I wouldn't give up Handcuffs

Monday N4C#16

Tuesday oct 27, 2025 spoke to Mr. Lewis and told Him I NEEDED to file A prea But was told once I got off WATCH I would Be given A CHANCE to

Friday oct 30, 2025 MADE prea call told I would see A prea Representative in A few days N4C#16 call took place in AFTERNOON told pyshchiatrist ABOUT incident to

Wednesday oct 28 2025, sent ARP to DWCC N4C#16

Thursday oct 29, 2025 sent Arp to DOC HEADQUARTERS & DONNA GRODNER N4C#16

N2#13 Filled out Medical Sick CAll still Haven't seen Medical Morning 1st Chow

9th Nov 21, 2025 Also sent KTA Acopy of Arp on Oct 27, 2025 used 1 stamp

\# pictures taken of inguries By Lt. Greer / Friday morning Oct 24, 2025 And He was told of incident And I Needed A Emergency Medical Attention

N4C tier # 16 saturday oct 24, 2025 flooded cell for Not Being Able to make A Medical emergency for Not Being Able to use the Bathroom And my insides was Burning And Hurting

Nov 11th ~~[illegible]~~, 2025 (Gray) picked up My Mail being sent to KTA with My Arp with it And A letter

P.S. sent Donna Grodner Her copy of My Arp And All the facts of my case with Legal Mail confidential wrote Big on Oct 27, 2025 in the morning put 3 stamps on it

chip picked up mail Being sent to DOC HQ 11/8/25 My ARP

Oct 29, 2025 went to court AND made A statement with All the facts Regarding the incident it's on Record Also and should Be Heard of me Repeatedly Requesting to use the phone to file PREA AND Also Being told I could when I got Had to talk to The Captain over My Blocks!

look on Back

- Tell any staff member at the Probation and Parole District Office. It is part of their job to report any allegation, to ensure the probationer or parolee's safety, and to maintain confidentiality; or
- Send a letter to the District Supervisor or the Director of Probation and Parole at:

Director of Probation and Parole
Department of Public Safety and Corrections
P.O. Box 94304
Baton Rouge, LA 70804-9304

## What Happens to Reports of Sexual Misconduct?

The DPS&C will investigate all allegations of sexual misconduct either through the Chief of Operations, the institution, or the Probation and Parole District Office. Staff will investigate allegations of:

Sexual misconduct, Sexual harassment; Over-familiarity; and Retaliation.

Offenders will never be punished for reporting sexual misconduct unless it is a false allegation, which is addressed in the next section. Every effort will be made to ensure the offender's protection.

## Possible Outcomes of an Investigation:

After the investigation is complete, one of the following decisions may be reached:

- There is sufficient evidence to conclude the allegation is true. If appropriate, results of the investigation will be sent to the District Attorney's Office for further review;
- There is insufficient evidence to conclude the allegation is true. If the investigation proves the offender made a false allegation, she/he will receive a disciplinary violation while incarcerated, or if on supervision, the Court or the Probation and Parole District Office will be notified; and
- There is not enough evidence to prove that the allegation is true, but there is evidence to prove that another law, policy, or rule was violated. Appropriate disciplinary action may take place.

Any staff member who sexually abuses or assaults an offender may be disciplined up to and including discharge.

## Just as Important:

Offender-on-offender sexual acts or abuse are prohibited and should be reported immediately.

Definition: One or more offenders engaging in, or attempting to engage in a sexual act with another offender or the use of threat, intimidation, inappropriate touching, or other actions and/or communications by one or more offender(s) aimed at coercing and/or pressuring another offender to engage in a sexual act.

While incarcerated, one offender does not have the right to pressure another offender to engage in sexual acts. An offender does not have to tolerate sexual assault or pressure to engage in unwanted sexual behavior.

## To Avoid Sexual Abuse an Offender:

Should choose associates carefully - look for people who are involved in positive activities;
Avoid being alone;
Do not accept gifts or favors from other offenders;
Do not accept an offer from another offender to be a protector;
Avoid borrowing and becoming indebted to someone - be confident and do not permit emotions to be obvious to other offenders; and
Find a staff person with whom you feel comfortable discussing fears and concerns.

Exhibit I



Copy front & Back

Sexual harassment is repeated verbal statements or comments of a sexual nature to an offender by an employee, volunteer, contractor, official visitor, or other agency representative (excluding offender's family, friends, or other visitors).

Examples of sexual harassment include but are not limited to:

- Demeaning references to an offender's gender or derogatory comments about body or clothing;
- Repeated profane or obscene language or gestures;
- Jokes about sex or gender specific traits;
- Abusive, threatening, profane or degrading sexual comments; and
- Touching, attention, or conduct of a sexual nature.

## What is Over-Familiarity?

Over-familiarity is staff engaging in or attempting to engage in conduct, likely to result in intimacy or a close personal relationship with an offender. Examples of this behavior by staff and offenders that is prohibited include, but is not limited to:

- Flirting with each other;
- Exchanging personal letters or gifts;
- Requests or granting of special favors; and
- Discussing personal matters unless it is an expectation of the staff member's job responsibilities.

## What is Retaliation?

Retaliation is intimidation to prevent an offender from filing a complaint or participating in an investigation of sexual misconduct. The Department prohibits any individual from interfering with an investigation, including intimidation or retaliation against witnesses. If an offender believes that she/he is being denied privileges, or is being unfairly transferred or punished in some way because she/he filed a complaint or assisted in the investigation of a complaint, she/he should report this to the Warden or District Supervisor.

## Reporting Staff Sexual Misconduct or Sexual Harassment:

Sexual misconduct or sexual harassment by staff is prohibited, but it must be reported before action can be taken. Do not rely on anyone else to report misconduct – when it is experienced or seen, report it immediately. Discipline and/or criminal prosecution are more likely to be successful if the abuse is reported immediately.
To make sure that sexual misconduct is reported, the DPS&C has several ways for offenders to report confidentially. Offenders may use the reporting method with which they are most comfortable.

## Reporting from a State Institution:

- Tell any staff member at the institution. It is part of their job to report any allegation, to ensure the offender's safety, and maintain confidentiality;
- Use the Administrative Remedy Procedure (ARP);
- Send a letter to the Warden at the institution; or
- Send a letter to the Chief of Operations of the DPS&C at:

Chief of Operations
Department of Public Safety and Corrections
P. O. Box 94304
Baton Rouge, LA 70804-9304

**Reporting while on probation or parole:**

 Exhibit J

**Help is Available:**

If an offender is a victim of sexual abuse she/he has a right to the services described in this section. (The medical access fee may be waived in cases of sexual abuse.)

Mental health and medical staff are willing and able to help. To take advantage of these services an offender may:

Complete a Request for Medical Treatment form to see medical or mental health, staff; or
Ask any staff person for help with a referral.

If under community supervision, a referral to an appropriate community treatment provider may be made by a staff member of the Division of Probation and Parole.

**Note:** If a sexual abuse has occurred, seek medical attention as soon as possible. Do not shower, brush teeth, wash clothes or underclothing. This could wash away hair or other bodily fluids which are critical evidence. Also, save anything that touched the perpetrator (e.g., a tissue or a towel) or anything that she/he left behind. **Immediately** report the incident to a staff person in the institution or to the Probation and Parole District Office.

**Remember:**

**Sex between offenders and staff is never okay.**
**If you are a victim, report it immediately.**
**All reported incidents will be investigated.**
**False allegations can hurt the victim and the accused.**
**Help is available.**

Exhibit K

Copy this side ONLY

## Directions to DWCC

**From 1-20 going East:**

At Minden, take exit 49 (Dubberly exit), turn left and continue on LA Hwy. 531 until it intersects with Hwy. 79. Turn right onto Hwy. 79. Continue onto Hwy. 79 through Homer. Continue past the stop light at the intersection of Hwy. 79 and Hwy 2. Take the first right onto Hwy. 520. Continue on Hwy. 520 for 8 miles. At the DWCC sign turn left. Continue until you reach the Front Gate.

**From 1-20 going West:**

At Arcadia take exit 67 (Arcadia/Homer exit), turn right and continue north on Hwy. 9 until it ends. Turn right on Hwy. 79 North. Continue on Hwy. 79 through Homer. Continue past the stop light at the intersection of Hwy. 79 and Hwy. 2. Take the first right onto Hwy. 520. Continue on Hwy. 520 for 8 miles. At the DWCC sign, turn left. Continue until you reach the Front Gate.

David Wade Correctional Center
670 Bell Hill Rd.
Homer, LA 71040
(318) 927-0400

# EMERGENCY ADMINISTRATIVE REMEDY PROCEDURE

NAME: KELVIN D SCOTT JR DOC# 580322 DOB 12-31-91 DATE OF INCIDENT: 10-23-25

OFFICERS INVOLVED: MAJOR GILLENTINE AND CPT CORLEY TIME OF INCIDENT: 9:50 to 10:25

Exhibit L

## Complaint:

ON THURSDAY OCT 23, 2025 AT THE HOURS OF 9:30AM to 10:30AM I WAS INVOLVED IN A INCIDENT WHERE A BEEPER WAS ACTIVATED SAYING I WAS A INMATE ON A OFFICER! I WAS RESTRAINED AND told to BE led to N4 lockdown, upon entering the lobby I was told to CATCH My KNEES And Not say A fucking word or move A fucking muscle. AN officer of the unit came in the lobby and asked what did I do, it was answered I jumped on A officer which I immediately responded to the lie being told saying "that was A lie" At which time my head was grabbed from behind and ran into the wall enough to cause A gash & blood to start leaking from my head, I asked for medical and was told I wasn't getting it! I was then escorted down N4 TIER and put in cell #16 on B TIER upon entering the cell I was told I was about to get it for what I done and to gone get ready, I was then thrown to the floor face first! My hair was then pulled back by Cpt. Corley and he proceeded to punch me with A closed fist over and over while I tried pulling down with my head to tuck my chin so I wouldn't be hit anymore! Major Gillentine then knelt on side me while cpt Corley pulled my hair again and Major Gillentine repeatedly slapped me on the face hard to where I almost lost consciousness and verbatim his words as he was doing it "Bitch you gone start listening to me you hear me bitch" And my reply verbatim was only "Yes Sir," After A few mintues of getting slapped and punched around I was finally released but left face first on the floor, my cell was closed down and I was told to get off the floor so they could get the handcuffs from round my back, I responded I couldn't I needed help at which time I was threatened and told verbatim by him "don't make me come back in there it's gone be worser" At which time I said verbatim "I don't care you just beat the fuck outta me fuck you"! The cell was told to be opened again at which time Major Gillentine came on my left side knelt beside me And then pulled my underwear down, placed his can on my anus and gave me A one burst, After he did it he then pulled my underwear back up and placed his foot in the crack of my ass and robbed his boot up and down for A couple seconds, when he was done he told me verbatim "Now you really got A reason to kill me" At which time I responded he was goin to die! I was told to get up off the floor again at which time I said I needed help the cell was opened again and I was helped up then brought to the bars and hands placed thew the tray hatch! After they were taken off I immediately ran to the toilet despite being told to strip out my clothes, I proceeded to dump all my clothes in the toilet

While pouring water all over my head and then I was told to come to the bars to Be Restrained At which Time I Replied "fuck you Bitch you just beat the fuck out me And sprayed me in my ass I ain't doing shit" He then gave A direct verbal order to be Restrained which I still Refused, He ended up spraying me two times At which Time I still wouldn't let Him Restrain Me, I screamed Homicide/Suicide and that I wanted to the Aprea But was told I HAD to wait! MAJOR Gillentine then gave A order to A officer to go grab the shield and pepper gun even After saying I was having A mental Health Breakdown, I was Asked Again by MAJOR Gillentine to come Be Restrained At which time Mr. Lewis My social worker Arrive on the scene to see what the situation was, After talking to me He said he was going to move But I HAD to put the cuffs and leg irons I still Refused and end up getting shot by MAJOR Gillentine multiple times until I eventually surrendered. I was told to CATCH my knees At which Time I Did, I was shackled with my hands Behind my back and led from cell #16 up the tier butt naked in front of A tier full of men Behind Bars, I was put in the lobby that way until the Nurse came thru the door and told them they HAD to cover me up, I was seen by Nurse phillips and asked was I Hurting Anywhere I told Her yeah in my ass At which Time she told me she couldn't do anything Bout it she wasn't examining that! I tried to get Help for 3 days straight and was Never taken seriously I couldn't use the Bathroom All of those days couldn't even Have A Bowel Movement! I was finally taken serious By Nurse Minnifield And am waiting to Be seen by Medical!

Signature: #580332
Kelvin D Scott JR
12.31.91

Exhibit M

Remedies: #1 No Retaliation
#2 Charges to Be Brought to MAJOR Gillentine and Cpt Corky
#3 compensated for pain, suffering & mental Anguish

# WITNESS List

Exhibit M

1st (ME) Kelvin D Scott Jr #580322
2nd social worker Mr. Lewis
3rd N4 B tier inmates on oct 23, 2025
4th Ms. Montgomery
5th Ms. Johnson
6th Msgt. Harper
7th Msgt. Jackson
8th Msgt. Gray
9th Msgt. Langley
10th Msgt. Island
11th My physciatrist (mental health)
12th Col. kidd
13th Ms. Harper
14th Warden Malcom
15th Col. Heard
16th Ms. Wells (social worker)
17th Col. Bradford
18th Col. Hauley
19th. inmate Quinton Peace
20th inmate Kenneth Thomas
21st Capt. Woods
22ND Nurse Ms. Minnifield
23rd Camera & Body footage on oct 23, 2025 south yard N4 B tier Cell #16 & Lobby of N4 9:40 AM to 11:00 AM
24th Disciplinary Hearing Recording oct 29, 2025
25th Lt. Greer

# Southern Poverty Law Center Report Shows Culture of Abuse at Florida Prison

*by Michael Thompson*

.e Southern Poverty Law Center SPLC) has released a new report de- ing a two-year investigation into the mic culture of violence and abuse in ıda prisons, especially that of the Gulf ·ectional Institution ("Gulf") in the ıandle region. While Gulf is likely the t case, SPLC points out that the abuse .rt of a greater culture existing within ida that evolved from the post-Civil systems built on "Black Codes, chain ;s, convict leasing, Jim Crow laws, the on Drugs, and mass incarceration." :ed, the Ku Klux Klan has concentrated resence in central and northern Florida, :h is also where 75% of Florida prisons ocated.

Gulf locks up between 1,500 and 1,600 ., most of whom are Black or brown, · the small town of Wewahitchka, a ·ly all-white town of only 2,000 resi- :s. Guard's use of violence has earned f the nickname "We-will-hit-ya," play- on the name of the town. But violence ɔt used in isolation. It is accompanied :hreats, degrading punishments, and rivation.

Among the many abusive tools, Gulf rds will initiate property restrictions, ch can remove all of an incarcerated ɔon's property, including their clothes ·pt their boxers, and place them in soli- · confinement to sleep on a cold steel k for up to three days. While denial of ıls is an obvious civil rights violation, rds have learned to use lids over empty ·s, so-called "air trays," in order to avoid ɔo documentation. They also engage in fishing," the practice of forcing barbers ;have a victim's entire head, including brows, causing those other incarcer- 1 persons to become accomplices in the niliation.

The use of chemical agents like pepper spray is not new to prisons, yet Gulf staff often intentionally spray the irritants directly into the mouth and ears of their targets, even going so far as tearing off their victims' pants and spraying the victims' groins and between their buttocks, furthering the pain and humiliation. Humiliation also comes for the victim through a practice of stripping them to their boxers and forcing them to stand in plain view of other prisoners on storm drain grates in the sun, rain, or cold, often with their limbs in odd positions or holding weighted objects.

The Florida Department of Corrections (DOC) is severely understaffed and overcrowded, encouraging the systemic violence. As far back as 2017, former DOC Secretary Julie Jones told the Senate Appropriations Committee that correctional staffing "is the root of virtually all the department's problems." In 2021, the DOC reported that staffing challenges had "reached crisis levels" with 29 facilities exceeding 20% vacancy rates. As of September 2023, Gulf was sitting at a 58% vacancy rate. And that was tied for the third highest rate in the state.

According to the SPLC report, "The burden of overcrowding and understaffing often results in dangerous consequences for people incarcerated at Gulf." Violence by staff only serves to enable violence by those they oversee, such that gangs thrive. The report adds, "Nearly every person SPLC interviewed reported that gangs are entrenched in their daily lives at Gulf. To them, it feels like the gangs run the institution. They attribute their problems to a lack of officers, officer complicity or indifference, or fear among officers to intervene."

Even the act of asking for protective custody ("Protective Management," or "PM"), called "checking in," can be a cause for staff-led abuse. DOC policy is that people who fear assault should notify staff who would then place them in solitary confinement pending investigation. However, shortage of space and the violent culture have led to a general disdain for those requesting help. It is only after the incarcerated person has been severely injured that they are transferred to another institution. The report is replete with first-person stories of people asking for assistance, only to be denied and even given disciplinary infractions.

Former Republican state Senator Jeff Brandes has founded the Florida Policy Project, which examines statewide issues such as criminal justice. Regarding SPLC's report, he said, "I think if one-tenth of that is true, it highlights the fact that we have a department of chaos." He added, "They're setting themselves up for massive litigation over inmates being harmed because of lack of staffing. At some juncture, it becomes unreasonable and I think the courts will find that as well."

Then again, maybe not. As SPLC identified in its report, courts have been hesitant to weigh in. Of the over 1,500 civil rights cases across the nation over a five-year period, "plaintiffs prevailed in only 11 cases, including two class actions." Meanwhile, President Donald Trump (R) has eviscerated the Department of Justice division "responsible for investigating and litigating unlawful prison conditions and redirected the remaining staff to enforce his executive orders reversing civil rights gains."

Sources: Southern Poverty Law Center, *Florida Phoenix*

Exhibit N

Form B-05-005-ARP-1
10 July 2013

## ADMINISTRATIVE REMEDY PROCEDURE

THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY

Offender's Name DOC # Date of Incident/Complaint

Place and Time of Incident/Complaint

Describe Nature of Complaint (i.e. WHO, WHAT, WHEN, WHERE, and HOW)

Offender's Signature DOC # Date

TO:
Offender's Name and DOC #

( ) ACCEPTED: Please respond to the offender within 40 days/Five days for PREA.

( ) REJECTED: Your request has been rejected for the following reason:

Date ARP Screening Officer

Exhibit

# Record $42.75 Million Verdict in Louisiana Detainee's Death in LaSalle Jail

*by Chuck Sharman*

In one of the largest verdicts ever returned in a suit over an American jail death, a federal jury in Louisiana awarded $42.75 million on October 20, 2025, to the Estate of Erie Moore, Sr., who died almost 10 years earlier while detained at the Richwood Correctional Center (RCC), a private jail owned and operated at the time for the City of Monroe by LaSalle Corrections.

According to the complaint later filed on his behalf, Moore's death traced in part to a bizarre incident in October 2012, when he followed a state trooper and pulled him over, making threats and suicidal comments in what the trooper ascertained was an attempt at "suicide by cop." That resulted in a notice to local law enforcement in Monroe, where Moore lived.

But the notice never made it to the Monroe cop who picked up Moore early on the morning of October 12, 2015, "for disturbing the peace by using foul language and acting erratically at a doughnut shop," the complaint recalled. Moore, 57, was taken into custody and delivered to RCC, but his booking wasn't completed because his behavior was too erratic.

Jailers put Moore in a lockdown cell to be held in isolation. But they soon added another detainee, Vernon White, 28, after breaking up his fight with a third detainee. That night, guards maced Moore to make him stop kicking his door. They maced him again the next morning after he and White got into a scuffle; they said Moore was acting "crazy."

After another altercation between the two detainees, White was found on the floor. Guards entered the cell to extract him, macing Moore a third time and striking the back of his head, knocking him to the floor. Once White was out of the cell—he later died of his injuries—six guards returned to extract Moore, putting him in a bear hug and slamming him head-first to the floor. He wasn't moving when they picked him up again, and a guard slipped and Moore's hit head the floor one more time.

The next hour and a half Moore spent in the "four-way" area of the jail, where no one attempted to treat him or even take his vital signs, the complaint said. There were also no surveillance cameras in the area. So there was no record of what happened before deputies from Ouichita Parish arrived to transport him to a schedule hearing there and found him restrained and unresponsive, his head bleeding. Because of those injuries, the Ouichita Parish Correctional Center refused to admit Moore when he arrived, sending him instead to a hospital, where he died of fatal brain injuries on November 14, 2015.

The Parish coroner ruled the death a homicide, but no one was charged. Monroe stopped contracting for RCC, which LaSalle now operates for federal Immigration and Customs Enforcement. Meanwhile, with the aid of Shreveport attorney Nelson W. Cameron, Moore's survivors sued LaSalle and Ouichita Parish personnel in U.S. District Court for the Western District of Louisiana in July 2016. Proceeding under 42 U.S.C. § 1983, they alleged violations of his Fourth and Eighth Amendment rights with excessive use of force, as well as training and supervision failures by LaSalle that demonstrated deliberate indifference to the serious risk of harm that resulted—and which ultimately left Moore dead.

After discovery, the district court granted Defendants' motion to dismiss the deliberate indifference and excessive force claims. But the U.S. Court of Appeals for the Fifth Circuit reversed that ruling in July 2022. As *PLN* reported, the Court found that "the record in this case is beyond troubling," reinstating the claims and denying LaSalle derivative sovereign immunity. [See: *PLN*, May 2023, p.18.]

The case proceeded to trial, at the conclusion of which jurors found LaSalle, its jail and staff 90% liable for Moore's death, the City of Monroe bearing the remaining 10% of the blame. Moore's survivors—three adult children—were awarded $19.5 million in compensatory damages, plus $23.25 million in punitive damages. *See*: *Moore v. LaSalle Corr. LLC*, USDC (W.D. La.), Case No. 3:16-cv-1007

"The jury found the guards continued to use excessive force against Mr. Moore in the camera-less area," Los Angeles attorney Max A. Schoening told *AP News*. He and fellow Qureshi Law attorney Omar Qureshi joined the Moore family's legal team for the trial.

Defendants moved the district court to bifurcate the verdict between compensatory and punitive components, apparently planning to appeal the latter for the jury's failure to make a separate apportionment of blame from that made for its compensatory damages verdict. On October 3, 2025, the district court agreed that "evidence associated with punitive damages ... should not be permitted until the second phase of trial." It further ordered that when the matter is heard, "Plaintiffs may reference the possibility of punitive damages in their opening statements but may not elaborate further or discuss Defendants' financial condition." *See*: *Moore v. LaSalle Corr. LLC*, 2025 U.S. Dist. LEXIS 196709 (W.D. La.).

Even if they succeed in striking down the punitive damage award, what remains is "the largest compensatory damage award I have ever heard of," according to Carnegie Mellon University professor Jay Aronson, who wrote *Death in Custody: How America Ignores the Truth and What We Can Do about It*. No appeal has been filed, but *PLN* will continue to update case developments.

Additional source: *AP News*

**GO HOME TO YOUR LOVED ONES!**

The Law Offices of Julia Bella
Parole - Post-conviction - Appeals

Call or Write or Email:
(832) 757-9799
503 FM 359, Ste. 130 Box 228
Richmond, Texas 77406
julia@jbellalaw.com

Working zealously for you and your family!

Exhibit D

9589 0710 5270 2146 9897 34

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 5.30

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage
$ 1.03

Total Postage and Fees
$ 6.33

Postmark Here

HOMER, LA 71040 — MAR 06 2026 — USPS

Sent To
Ms Newman Internal Affairs DOC Headquarters

Street and Apt. No., or PO Box No.
P.O. Box 94304

City, State, ZIP+4®
Baton Rouge, La 70804

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

Exhibit Q

# Prisoner Assaulted by BOP Guard and Left With Bleeding Rectum—Then the Cover-Up Began

*by Chuck Sharman*

A 50-page complaint filed in the U.S. District Court for the Eastern District of California on October 30, 2025, seeks "some measure of justice" for the prisoner who filed it, identified in the complaint as "J.M." and in the accompanying claim under the Federal Tort Claim Act (FTCA) as Jahleel McLendon, 32. It also peels back layers of official obstruction to reveal a stunning web of violence and deceit connecting at least four lockups where the prisoner has been held by the federal Bureau of Prisons ( OP).

The most recent chapter of his saga :n in November 2023 at the Federal rectional Institution (FCI) in Atwater, ifornia, where guard Sandra Munagay ›tted J.M. in a straw hat and confiscated .rom him—though he had bought it from ıe commissary. When he later asked for its eturn, Munagay punched him. Another guard seeing this on surveillance video in the control room sent an emergency response team. Munagay lied to them that J.M. had punched her and wrote up a false disciplinary report. The other guards took him to an off-camera area, pinning him to the wall and "ramming a blunt object into his anus through his clothes until he bled," the complaint recalled.

This was not J.M.'s first assault by guards; attempts to litigate earlier attacks by staff at the U.S. Penitentiary (USP) in Big Sandy, Kentucky, had gotten him transferred to USP-Thomson in Illinois and its notorious Special Management Unit—before a sky-high death rate forced the BOP to close it in 2023, as *PLN* reported [See: *PLN*, Aug. 2023, p.16.], and he was sent to FCI-Atwater.

Having been through this before, J.M. was aware that the nurse who saw him would not record his sexual assault report. So he said it aloud, for surveillance audio to record. BOP immediately transferred him to FCI-Mendota, farther north in California, and from there to a hospital emergency room, where the injury was confirmed.

"The retaliation was swift," the complaint continued; J.M. was held in solitary confinement and "repeatedly 'four pointed'—lashed to a concrete slab in isolation for 20 hours or more without food, water, or a toilet, forced to urinate and defecate on himself." He was released only when the hearing finally convened six months later on the false disciplinary report, and "one look at the video surveillance showed that Munagay and every other officer had lied."

Munagay was charged with felony assault and obstruction; her case remains pending. *See*: *United States v. Munagay*, USDC (E.D. Cal.), Case No. 1:24-cr-00256. With the aid of attorneys from Connelly Law Offices PPLC in Tacoma, Washington, J.M. filed the FTCA claim in April 2025. But as the complaint recalled, the BOP "made no effort to investigate, request additional information, discuss settlement, or provide any substantive response."

Meanwhile, as *PLN* reported, Big Sandy guard Lt. Terry L. Melvin pleaded guilty in January 2025 to assaulting another prisoner, telling the federal court for the Eastern District of Kentucky that the brutality was a "commonplace occurrence," abetted by a conspiracy that went almost to the top of the prison's hierarchy. It was certainly bigger than the four guards sentenced to federal prison in 2024 for assaulting prisoners, which *PLN* also reported. [See: *PLN*, Apr. 2025, p.19; and July 2024, p.12.]

Combined with a scandal of staff raping prisoners at nearby FCI-Dublin—which cost the BOP $116 million to settle [See: *PLN*, July 2025, p.1]—FCI-Atwater was under too much scrutiny to succeed in burying J.M.'s claims. After Munagay was indicted, he was exonerated of the false disciplinary charge. But he had "also suffered profound psychological harm, including mental pain and suffering," his complaint continued, including "attempt[s] to commit suicide multiple times due to the assaults, the emotional distress inflicted, and BOP's efforts to cover up its employees' crimes."

Yet when J.M. filed a request under the Freedom of Information Act for his medical, grievance and housing records in January 2025, the BOP ignored it; "[t]en months later," the complaint noted, "the BOP has not produced a single record." For that and the other violations of his rights, it makes claims under the FTCA and the Eighth Amendment. The suit was only recently filed, and *PLN* will continue to update developments. But the light it has already shed on the BOP's cruel culture is invaluable. *See*: *J.M. v. United States*, USDC (E.D. Cal.), Case No. 1:25-cv-01011.

Vol. 4

FREEBIRD PUBLISHERS

All New Catalog Vol. 4. Our full color catalog has product listings of our prisoner publications: books, photo services, high quality gifts and holiday selections too! Catalog includes complete detailed ordering information, forms and more. All pages featured in detailed full color photographs on 5.5" x 8.5", 92 pages with full descriptions & prices. **$5.00**

**Freebird Publishers**
**221 Pearl St. Ste. 541 N. Dighton MA 02764**

Exhibit R

Form HCP13-a
17 November 2024

Kelvin Scott

Exhibit 5

## Request for Medical Treatment

580322 **Facility:** [illegible]

| Kelvin D Scott Jr | 580322 | 34 | N4C-7 | N/A | [illegible] | |
|---|---|---|---|---|---|---|
| **Inmate Name** | **DOC#** | **Age** | **Housing** | **Job Assignment** | **Date** | **Time** |

**HEALTHCARE REQUEST: INMATE COMPLETE THIS SECTION ONLY**

[illegible]

**Health Care Personnel Assessment: Date:** 3/20/26 **Time:** 0630 **Allergies:** ____

☐ Routine Sick Call $2.00

☐ Health Care Service Accessed Outside of Routine Sick Call $6.00 (Select One)

☐ **Self Declared Emergency** ☐ **Altercation** ☐ **Other**

☐ No Fee: ☐ Work Related ☐ PREA Assessment

**Medications Ordered:**

Total #: 2.0

**Health Care Personnel Signature**

☐ No Fee ☐ $2.00 Access Fee ☐ $6.00 Access Fee ☐ $2.00 for Each Prescription/OTC Medication Fee: $ 2.00

Total: $ 2.00

I understand in accordance with Dept. Reg. No. HCP14, I will be charged $2,00 for routine sick call and $6.00 for health care services accessed outside of routine sick call to include self-declared emergency, altercation, or any other unscheduled health care services. $2.00 will be assessed for each new prescription medication and/or over the counter non-prescription medication. No fee shall be assessed for work-related incidents or PREA assessments.

| Kelvin D Scott Jr | 580322 | 3-19-26 | |
|---|---|---|---|
| Inmate Signature | DOC# | Date | Witness Signature |

Original - Inmate's Medical Record Yellow - Business Office Pink - Inmate's Copy

Form HCP13-a
17 November 2024

Exhibit T

# Request for Medical Treatment

**Facility:** ______________________

| Kelvin D Scott Jr | 580322 | 34 | N4 [illegible] 1 | N/A | 2-24-26 | |
|---|---|---|---|---|---|---|
| **Inmate Name** | **DOC#** | **Age** | **Housing** | **Job Assignment** | **Date** | **Time** |

**HEALTHCARE REQUEST: INMATE COMPLETE THIS SECTION ONLY**

I'm having problems with my left leg [illegible] pepper [illegible] I can't stand [illegible] gets weak [illegible]

**Health Care Personnel Assessment: Date:** 2/24/26 **Time:** 06 31 **Allergies:** ______________

☐ Routine Sick Call $2.00

☐ Health Care Service Accessed Outside of Routine Sick Call $6.00 (Select One)

☐ **Self Declared Emergency** ☐ **Altercation** ☐ **Other**

☐ No Fee: ☐ Work Related ☐ PREA Assessment

**Medications Ordered:**

______________________

______________________

______________________

______________________ **Total #:** ________

**Health Care Personnel Signature**

☐ No Fee ☐ $2.00 Access Fee ☐ $6.00 Access Fee ☐ $2.00 for Each Prescription/OTC Medication Fee: $ ______

Total: $ 2.00

I understand in accordance with Dept. Reg. No. HCP14, I will be charged $2.00 for routine sick call and $6.00 for health care services accessed outside of routine sick call to include self-declared emergency, altercation, or any other unscheduled health care services. $2.00 will be assessed for each new prescription medication and/or over the counter non-prescription medication. No fee shall be assessed for work-related incidents or PREA assessments.

| Kelvin D Scott Jr | 580322 | 2-24-26 | [signature] |
|---|---|---|---|
| Inmate Signature | DOC# | Date | Witness Signature |

Original - Inmate's Medical Record Yellow - Business Office Pink - Inmate's Copy

*(Rev. 12/15/2023)*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
_______________ DIVISION

_______________________________ Civil Action No. _______________ SEC. P

Plaintiff

Prisoner # _______________

VS. Judge _______________________

Magistrate Judge _______________________

_______________________________

Defendant

**COMPLAINT**
**PRISONER CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

## I. Previous Lawsuits

a. Have you begun any other lawsuit while incarcerated or detained in any facility?

Yes _____ No _____

b. If your answer to the preceding question is "Yes," provide the following information.

1. State the court(s) where each lawsuit was filed (if federal, identify the District, if state court, identify the County or Parish):

_______________________________________________________________

_______________________________________________________________

2. Name the parties to the previous lawsuit(s):

Plaintiffs: _______________________________________________

Defendants: _______________________________________________

3. Docket number(s): _______________________________________________

4. Date(s) on which each lawsuit was filed: ___________________________

5. Disposition and date thereof [For example, was the case dismissed and when? Was it appealed and by whom (plaintiff or defendant)? Is the case still pending?]:

_______________________________________________________________

c. Have you filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed?

Yes _____ No _____

If your answer to the preceding question is "Yes," state the court(s) which dismissed the case, the civil action number(s), and the reason for dismissal (e.g., frivolity, malice, failure to state a claim, defendants immune from relief sought, etc.).

_______________________________________________

_______________________________________________

**II. a. Name of institution and address of current place of confinement:**

_______________________________________________

b. Is there a prison grievance procedure in this institution?

Yes _____ No _____

1. Did you file an administrative grievance based upon the same facts which form the basis of this lawsuit?

   Yes _____ No _____

2. If you did not file an administrative grievance, explain why you have not done so.

   _______________________________________________

   _______________________________________________

3. If you filed an administrative grievance, answer the following question. What specific steps of the prison procedure did you take and what was the result? (For example, for state prisoners in the custody of the Department of Public Safety and Corrections: did you appeal any adverse decision through to Step 3 of the administrative grievance procedure by appealing to the Secretary of the Louisiana Department of Public Safety and Corrections? For federal prisoners: did you appeal any adverse decision from the warden to the Regional Director for the Federal Bureau of Prisons, or did you make a claim under the Federal Tort Claims Act?)

   _______________________________________________

   _______________________________________________

   Attach a copy of each prison response and/or decision rendered in the administrative proceeding.

**III. Parties to Current Lawsuit:**

a. Plaintiff, _______________________________________________

   Address _______________________________________________

(Rev. 12/15/2023)

b. Defendant, ______________________, is employed as ______________ at ______________.

Defendant, ______________________, is employed as ______________ at ______________.

Defendant, ______________________, is employed as ______________ at ______________.

Additional defendants, ______________________

______________________

## IV. Statement of Claim

State the **FACTS** of your case. Specifically describe the involvement and actions of each named defendant. Include the names of all persons involved in the incident(s) or condition(s) giving rise to this lawsuit, and the dates upon which and the places where the incident(s) and/or condition(s) occurred. **YOU ARE REQUIRED TO SET FORTH ONLY FACTUAL ALLEGATIONS. YOU ARE NOT REQUIRED TO SET FORTH LEGAL THEORIES OR ARGUMENTS. IF EXTRA PAGES ARE REQUIRED TO STATE THE FACTS OF YOUR CASE, YOU ARE LIMITED TO FIVE TYPEWRITTEN OR TEN LEGIBLE HANDWRITTEN PAGES PURSUANT TO LOCAL CIVIL RULE 3.2**

*(Rev. 12/15/2023)*

## V. Relief

State exactly what you want the court to provide to you or do for you. Make no legal arguments. Cite no cases or statutes.

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

## VI. Plaintiff's Declaration

a. I understand that if I am transferred or released, I must apprise the Court of my address, and my failure to do so may result in this complaint being dismissed.

b. I understand that I may not proceed without prepayment of costs if I have filed three lawsuits and/or appeals that were dismissed on grounds that the action and/or appeal was frivolous or malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

c. If I am located in a prison participating in the Electronic Filing Pilot Program, I consent to receive orders, notices and judgments by Notice of Electronic Filing.

**Signed this ____ day of ________ , 20 ___ .**

| | |
|---|---|
| **Prisoner no. (Louisiana Department of Corrections or Federal Bureau of Prisons)** | **Signature of Plaintiff** |

*(Rev. 12/13/2024)*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
DIVISION

| | | |
|---|---|---|
| ______________________ Plaintiff | Case Number | SEC. P |
| Prisoner # __________ | | |
| VS. | Judge | |
| | Magistrate Judge | |
| ______________________ Defendant | | |

**APPLICATION TO PROCEED *IN FORMA PAUPERIS***
**PURSUANT TO 28 U.S.C. § 1915**

I, _____, prisoner/ICE identification number_____, declare that I am the Plaintiff ☐ / Petitioner ☐ in this case.

- If you are a plaintiff in a civil rights action, are you serving a criminal sentence? Yes ☐ No ☐

- If you are **not** serving a criminal sentence, are you being held pursuant to a detainer placed upon you by a government agency such as the U.S. Immigration and Customs Enforcement (ICE)? Yes ☐ No ☐

☐ **Movant (filing 28 U.S.C. § 2255 motion)**

☐ **Other ____**

In support of my request to proceed without prepayment of the full filing fee or costs under 28 U.S.C. § 1915, I declare that I am unable to pay the full filing fee or costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

1. Are you incarcerated? Yes ☐ No ☐

   If "Yes," state place of incarceration: _____.

   If "No," this is the incorrect form. You should request the Application to Proceed *In Forma Pauperis* for non-prisoners.

2. Do you have a work, program, status assignment, or other circumstances which causes you to be paid by the prison, jail, or other custodial institution? Yes ☐ No ☐

3. In the past 12 months have you received money from the following sources? If so, stat the total amount received.

| | | | **Amount** |
|---|---|---|---|
| a. Business, profession or other self-employment | Yes ☐ | No ☐ | $____ |
| b. Rent payments, interest, or dividends | Yes ☐ | No ☐ | $____ |
| c. Pensions, annuities, or Life insurance payments | Yes ☐ | No ☐ | $____ |
| d. Disability or Worker's Compensation Payments | Yes ☐ | No ☐ | $____ |
| e. Gifts or Inheritances | Yes ☐ | No ☐ | $____ |
| f. Any other sources | Yes ☐ | No ☐ | $____ |

If the answer to any of the above is "Yes," describe each source of money and state the amount received **and** the amount that you expect to continue to receive.

4. Do you have **any** cash or checking or savings accounts outside the prison?
Yes ☐ No ☐ Amount $____

5. Do you have any secondary savings account, such as a certificate of deposit or a savings bond?
Yes ☐ No ☐ Amount $____

6. Do you own any assets including real estate, stocks, bonds, securities, other financial instruments, automobiles, or other valuable property?
Yes ☐ No ☐

If "Yes," describe each asset and state its value:

| | **Value** |
|---|---|
| Automobiles ____ | $____ |
| Make/Model/Year ____ | $____ |
| Stocks ____ | $____ |
| Bonds ____ | $____ |
| Notes ____ | $____ |
| Real Estate ____ | $____ |
| Mortgage Amount ____ | $____ |
| Other ____ | $____ |

7. Have you on any prior occasion, while incarcerated or detained in any prison, jail, or other facility, brought an action in federal court that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon which relief could be granted?
   Yes ☐ No ☐

   If "Yes," list the dismissals:

| Date Dismissed | Case Name | | | Case Number | Court |
|---|---|---|---|---|---|
| ____ | ____ | vs. | ____ | ____ | ____ |
| ____ | ____ | vs. | ____ | ____ | ____ |
| ____ | ____ | vs. | ____ | ____ | ____ |

8. If this request is for an appeal, please state the issues you intend to present on appeal:
   ______________________________________________
   ______________________________________________
   ______________________________________________

**I declare under penalty of perjury that I have submitted a complete statement of all of the assets that I possess and that all of the information set out above is true and correct.**

**Executed on** ____________ ______________________________
**(Date)** **(Signature of Applicant)**

*(Rev. 12/13/2024)*

**Case Number: ____**

## AUTHORIZATION

I, _____ prisoner/ICE detainee identification number _____, request and authorize the institution holding me in custody, to send to the Clerk of Court for the United States District Court, Western District of Louisiana, a certified copy of the statement for the last six months of my account at the institution where I am incarcerated and/or detained. If required by this court, I further authorize the institution holding me to forward from my account to the Clerk of Court any initial partial filing fee assessed by the Court in the amount of 20 percent of the greater of the average monthly deposits to my prison account or the average monthly balance in my prison account for the six-month period immediately preceding the filing of this complaint or petition. Thereafter, if I am a prisoner and not an ICE detainee, I authorize the institution of incarceration to forward monthly payments of 20 percent of my preceding month's income credited to my prison account to the Clerk of Court each time my balance exceeds $10.00 until I have paid the filing fee in full.

This authorization is furnished in connection with the commencement of a civil action, and I understand that the total amount of filing fees for which I am obligated is $350.00 if this application is granted or $405.00 if denied. I also understand if I am a prisoner and not an ICE detainee that these fees will be debited from my account regardless of the outcome of my civil action. This authorization shall apply to any other institution into whose custody I may be transferred.

I further acknowledge that I have not directly or indirectly paid or caused to be paid to any inmate, agent of an inmate, or family member of an inmate a sum of money, favors or anything else for assistance in the preparation of this document or any other document in connection with this action.

____________________ ____________________________________

**(Date)** **(Signature of Prisoner)**

*(Rev. 12/13/2024)*

**Case Number: ____**

**CERTIFICATE**

I request that an authorized officer of the institution in which I am confined, or other designated entity, complete the below financial certificate. I understand that:

1. If I commence a petition for Writ of Habeas Corpus in federal court pursuant to 28 U.S.C. § 2254 or 28 U.S.C. § 2241, the filing fee is $5.00, and such fee will have to be paid by me.
2. If I file a civil action with this court (such as an action pursuant to 42 U.S.C. § 1983) the filing fee is $405.00, and, that:
   a. If my current account balance at the institution is $405.00 or more, I will not qualify for *in forma pauperis* status and I must pay the full filing fee of $405.00 before I will be allowed to proceed with the action;
   b. If my current account balance at the institution is $405.00 or less and I am a prisoner and not an ICE detainee, that before the action will be served on the defendants, I will be required to pay 20 percent of my average monthly balance, or the average monthly deposits to my account, whichever is greater. Thereafter I must pay installments of 20 percent of the preceding month's deposits to my account in months that my account balance exceeds $10.00, and I hereby authorize the institution where I am confined to make such deductions. I must continue to make installment payments until the **$350.00 ($405.00 minus a $55.00 administrative fee)** filing fee is fully paid, without regard to whether my action is closed or my release from confinement;
   c. If my current account balance at the institution is $405.00 or less and I am an ICE detainee granted IFP status, I will not pay any of the $405.00 filing fee in a civil matter and will only pay $5.00 in a habeas matter. If I am an ICE detainee and I am denied IFP status, I must pay the full $405.00 filing fee.
3. I further state that I have not directly or indirectly paid or cause to be paid to any inmate, agent of an inmate, or family member of any inmate a sum of money, favors or anything else for assistance in the preparation of this document or any other document in connection with this action.
4. If I am located in a prison participating in the Electronic Filing Pilot Project, I consent to receive orders, notices, and judgments by Notice of Electronic Filing.

| ____________ | ______________________ | ______________________________ |
|---|---|---|
| **(Date)** | **(Printed Name of Applicant)** | **(Signature & Prison Number of Applicant)** |